Talbert, the original plaintiff, died intestate, and February 3, 1893, Anna Maria Talbert was duly appointed administratrix of his estate, and by an order of this court entered March 3, 1893, this action was revived and continued in her name. July 12, 1894, upon the stipulation of the parties, the action was referred to a referee to hear and determine, who found that the plaintiff was entitled to the sum paid into court.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Jonathan L. Slater, for appellant.

Philip A. Laing, for respondent.

FOLLETT, J. The defendant excepted only to the eleventh and thirteenth findings of fact, and, no exception having been taken to the conclusion of law, the decision of the referee cannot be reviewed. But if an exception had been duly taken to the conclusion of law, the result would not have been different, for the judgment could not have been disturbed. It was established by undisputed evidence, and found by the referee, that Robert Talbert paid all of the sums which became due from William Storum to the insurance company to procure the certificate and to keep it in force. When the certificate was assigned, Talbert had an insurable interest in the life of Storum equal to the amount assigned. Storum was then indebted to Talbert in the sum of $350, secured by two mortgages, which remained unsatisfied until April 7, 1887. Before the assignment Talbert had paid to the corporation on account of the certificate $15.50,—all that had been paid,—which was undoubtedly the full value of the certificate at that time. Between the dates of the assignment and the death of Storum, Talbert paid to the association, to keep the certificate in force, $334.38, making a total of $349.88, aside from the interest, paid by him on account of the certificate. It was also shown that before and after the assignment Talbert provided Storum with goods and provisions, and advanced moneys to and rendered services for him, and that this practice continued for years. These facts were established by the undisputed evidence of Storum's sister and by the testimony of other witnesses. It seems quite clear that the sums advanced, the value of the goods furnished and services rendered, with interest added, equal the amount due on the certificate. The evidence is sufficient to sustain all of the findings of fact, and they justify the conclusion of law.

The judgment is affirmed, with costs. All concur.

---

### NIAGARA FALLS & L. R. CO. v. BRUNDAGE.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

ARBITRATION AND AWARD—EFFECT OF SUBMISSION—PENDING ACTION.

An agreement submitting to arbitration the matters involved in a proceeding to condemn land is, in effect, a discontinuance of such proceeding, though no formal order of discontinuance is entered, and will defeat a motion of petitioner to enter immediately on the land, for the purpose of constructing its railroad, on depositing with the county treasurer money to be applied for paying such damages as may be awarded.

Appeal from special term, Niagara county.

Proceeding by the Niagara Falls & Lewiston Railroad Company against James T. Brundage, impleaded with De Veaux College, to sell land for a right of way of plaintiff's railroad. From an order permitting plaintiff to enter immediately on the land described in its petition, and devote the same to the construction of its road, pursuant to Code Civ. Proc. § 3380, on depositing with the treasurer of Niagara county $20,000, to be applied, so far as necessary, for the purpose of paying the award of damages that might be made in the proceedings, defendant Brundage appeals.    Reversed.

October 8, 1890, the Niagara Falls & Lewiston Railroad Company was incorporated, pursuant to chapter 140, Laws 1850, as amended by subsequent statutes, for the purpose of constructing a railroad from the village of Lewiston, in the county of Niagara, to the city of Niagara Falls, in said county. In March, 1892, it filed a map and profile of its route in the office of the clerk of the county of Niagara, pursuant to section 22, c. 140, Laws 1850, as amended by subsequent statutes. By chapter 243, Laws 1853, De Veaux College was incorporated with power to take and hold real estate, pursuant to which it became the owner in fee of a tract of land now within the city of Niagara Falls, a portion of which, known as the "Whirlpool Grounds," it leased June 1, 1893, for an annual rent of $1,000, to James T. Brundage for five years, which term will end June 1, 1898. The plaintiff, being unable to acquire by agreement a right of way across the leased lands, began May 3, 1895, proceedings against De Veaux College and James T. Brundage to acquire a right of way by condemnation. James T. Brundage appeared in the proceedings, and May 15, 1894, answered, denying the right of the plaintiff to acquire lands by condemnation and alleged that by the taking of the right of way sought to be acquired he would be damaged in the sum of $20,000. After these proceedings were begun (the date not appearing), the plaintiff acquired the title of De Veaux College to said lands for a right of way, subject to the leasehold interest of Brundage. June 29, 1895, the president of the plaintiff wrote the defendant, offering $4,000, payable in installments, for his leasehold interest, "or will leave it to Charles Miller, Major Weeks and John Level, or to a commission that the court may select." The defendant declined the offer of $4,000, and July 3, 1895, the parties executed the following agreement to arbitrate:

"This agreement, made and entered into this 3d day of July, 1895, by and between James T. Brundage of the city of Niagara Falls, N. Y., or the first part, and the Niagara Falls & Lewiston Railroad Company, of the second part: Whereas, the said party of the first part being the owner of and in possession under a certain lease in writing, of the lands and premises known as the 'Whirlpool Grounds,' located in the city of Niagara Falls, N. Y., which lease was made and entered into by and between the De Veaux College for Orphan and Destitute Children, and the said James T. Brundage, and which lease bears date June 1st, 1893, for the term of five (5) years from the date thereof; and the said The Niagara Falls & Lewiston Railroad Company being desirous of constructing its roadbed, running its cars, and operating its road through, upon, over, and across a portion of said lands which are covered by and included in the said lease. And the said parties hereto having failed to agree upon the amount of damages to be paid to the said Brundage, by reason of the constructing and operating of said railroad through, upon, over, and across said lands, and the cancellation and surrender of said lease by the said Brundage; and the said parties hereto having agreed to submit the question of damages to be paid to the said Brundage to three arbitrators, who have been selected and agreed upon by the parties hereto, namely, John C. Level, Edson J. Weeks, and Charles W. Miller, all of the city of Buffalo, N. Y.: Now, this agreement witnesseth that in consideration of the submission of the question of damages to be paid to the said Brundage as aforesaid, to the three arbitrators above named, and other good and valuable considerations, the parties hereto hereby covenant and agree as follows: That they will

abide by and accept as final the decision of the three arbitrators above named, or the decision of a majority of the same, and that the sum agreed upon by said three arbitrators, or a majority of the same, will be accepted by the parties hereto as final. It is also agreed to by and between the parties hereto that no appeal shall be taken from the decision of said three arbitrators, or a majority of them, and said party of the second part will pay to the said party of the first part, and the said party of the first part will accept from said party of the second part, the sum agreed upon by the said three arbitrators, or a majority of them, as damages to be paid to the said Brundage by reason of the constructing and operating of the said railroad across, upon, over, and through the lands covered by and included in the lease from the De Veaux College, etc., to the said James T. Brundage, and the cancellation and surrender of the said lease by the said Brundage. In witness whereof the party of the first part has hereunto set his hand and seal; and the party of the second part has caused this instrument to be subscribed by its president and its corporate seal affixed, the day and year first above written. J. T. Brundage [L. S.] Niagara Falls & Lewiston R. R. Co. [L. S.] J. M. Brinker, Prest.

"Witness: David N. Evans."

July 13, 1895, the plaintiff moved upon the petition and answer in the condemnation proceedings and upon the affidavits of Herbert P. Bissell and John M. Brinker, verified July 12, 1895, for an order pursuant to section 3380 of the Code of Civil Procedure, directing that the plaintiff be permitted to enter upon the property, and construct its railroad, upon depositing with the court $20,000. In the affidavits of Bissell and Brinker it is stated that the plaintiff, with the consent of Brundage, entered upon his leasehold interest, and constructed its road. The defendant, in his affidavit, verified July 15, 1895, states that the plaintiff entered on his lands without his knowledge or consent, that upon learning the fact he notified the plaintiff to discontinue work, and that afterwards, pending negotiations for a settlement of the damages, he consented that the plaintiff might continue the construction of its road across his land.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and WARD, JJ.

Ellsworth, Potter & Storrs, for appellant.
Herbert P. Bissell, for respondent.

FOLLETT, J. An agreement submitting a controversy involved in an action or in a special proceeding then pending to arbitrators to hear and determine, pursuant to the rules of the common law, effects a discontinuance of the action or proceeding. McNulty v. Solley, 95 N. Y. 242; Keep v. Keep, 17 Hun, 152; Jordan v. Hyatt, 3 Barb. 275; 2 Rum. Prac. 159; 1 Am. & Eng. Enc. Law, 661. The fact that a formal order was not entered discontinuing the proceeding did not deprive the defendant of the right to set up the agreement as a defense to the motion. An agreement between parties settling an action pending is a perfect defense to it, though no order has been entered formally discontinuing it; and it has been held that a parol submission to arbitrators of a cause pending is a good defense to the action, notwithstanding the existence of a general rule of court that no agreement between litigants shall be binding unless in writing or evidenced by an order of the court. Wells v. Lain, 15 Wend. 99; 1 Crary, Prac. 30. The agreement provides that the sum awarded shall be binding and final on the parties, and both waived their right to appeal given by section 3375 of the Code of Civil Procedure, and the defendant waived the defenses to the proceeding set up in his answer,

and the contract is wholly inconsistent with the theory advanced to sustain the order that the agreement amounted only to a selection of commissioners in the proceeding. The plaintiff made a written offer to arbitrate, and selected the arbitrators, which the defendant accepted, and within 10 days after the execution of the agreement the plaintiff made this motion. It is not asserted that the defendant had interfered with the plaintiff's possession, or had refused to go on under the agreement, and we find no justification in the record for the plaintiff's attempt to nullify the arbitration proposed by it, and consented to by both parties under their hands and seals.

The order should be reversed, with costs. All concur.