Richard S. Heller, J.
These four claims arose from the appropriation in fee of three parcels of land pursuant to sec *495 tion 30 of the Highway Law. All three parcels were located on the south side of Genesee Street in the Village of Fayetteville and were appropriated for the improvement of Genesee Street which is State Highway No. 5660. This highway is known as Route 5 and is a major east-west artery of travel.
Claim No. 35268 seeks recovery of damages for the appropriation of a plot shown on appropriation Map No. 15 as Parcel No. 16. The appropriation map was filed in the Department of Public Works on March 28, 1957, in the Department of State on April 9, 1957, and in the Onondaga County Clerk’s office on May 7, 1957. Personal service on the claimants was made on November 22, 1957 and the claim was filed on January 15, 1958 and an amended claim was filed on September 30,1958.
This plot had a frontage on the south side of Genesee Street of 107 feet. It was bounded on the west by a lane or alley runing south from Genesee Street for the full depth of the plot of 154 feet. The plot was bounded on the east by Mill Street which ran south from Genesee Street for the full depth of the plot of 157 feet. The southerly boundary ran easterly from the lane to Mill Street a distance of 111 feet. From the west line of the property to the east line of the property Genesee Street was on an ascending grade to the east and at the east line of the property and the - intersection with Mill Street, Genesee Street continued the ascending grade and curved quite sharply to the southeast.
The plot was improved with four separate structures. The structure at the northwest corner was a two-story building with full basement having a frontage on Genesee Street of 63 feet and a depth of 55 feet. It had a central oil-fired steam heating system. There were three stores on the ground floor facing on Genesee Street. On the second floor there were six complete apartments, four with two bedrooms, kitchen, bathroom and living room and two with single bedroom, kitchen, bathroom and living room. The building was a brick and wood construction with a cast concrete facing on the brick along Genesee Street.
The building at the northeast corner of the property had a frontage of 40 feet on Genesee Street and 55 feet on Mill Street. The building was of brick construction and had four stories and a full basement. Due to the difference in grade between Genesee Street and Mill Street, the building had a ground floor and three floors above facing on Genesee Street and a ground floor and two floors above facing on Mill Street. It had two stores facing on Genesee Street and three stores facing on Mill Street. The building also had three full apartments and the top floor had been utilized by a commercial artist. Bach of the three *496 apartments had two bedrooms, ldtchen, bathroom and living room. The building had a central oil-fired hot-water heating system.
Contiguous to the above-described building, was a third building with a 42-foot frontage on Mill Street and a depth of 33 feet. This building was of brick construction and had two stories with a full basement. It was heated by the same oil-fired hot-water system which heated the above-described building. The first floor was used as a restaurant with kitchen, barroom and dining room which would seat approximately 60 people and all other necessary facilities. On the second floor there was one apartment with three bedrooms, living room, kitchen and bathroom.
Immediately south of this building there was a small storage building constructed of cement block with a full basement and one story, having a frontage on Mill Street of about 10 feet and a depth of about 33 feet.
With the exception of the storage building, all of the structures on this plot were about 100 years old. Claimants presented testimony that with good care and maintenance the buildings could be expected to last 50 years from the date of appropriation. There was no definition as to what had to be included in good care and maintenance. The State presented evidence indicating deterioration visible in the rear walls and basements of the buildings but presented no evidence as to the remaining useful life of the buildings and showed no structural defects visible along the Genesee Street or Mill Street frontage.
Claim No. 35269 seeks recovery of damages for the appropriation of a plot shown on Appropriation Map No. 14 as Parcel No. 15. The Appropriation Map was filed in the Department of Public Works on March 28, 1957, in the Department of State on April 9, 1957 and in the Onondaga County Clerk’s office on May 7, 1957. Personal service on the claimants was made on November 22, 1957.
This plot was contiguous to and immediately south of the plot involved in Claim No. 35268 and was owned by the same claimants. The plot had a 75-foot frontage on Mill Street, a southerly boundary of 113 feet running westerly from Mill Street to the lane running south from Genesee Street and a frontage on that lane or alley of 75 feet. The plot was at grade on Mill Street but then dropped sharply to the west to the grade of the lane. It was available and was used for parking off Mill Street and off the lane in connection with claimant’s other property.
*497 Claim No. 35984 seeks recovery of damages for the appropriation of a plot shown on Appropriation Map No. 15 as Parcel No. 17. The Appropriation Map was filed in the Onondaga County Clerk’s office on May 7, 1957. Personal service on the claimant was made on February 13, 1959.
The plot was a vacant lot located at the southeast corner of Mill Street and Genesee Street. It was directly across Mill . Street from the plot involved in Claim No. 35268. The northerly boundary of this lot extended southeasterly from the intersection of Mill Street and Genesee Street along Genesee Street for 71 feet. The east line ran southerly from Genesee Street a distance of 58 feet. The south line ran westerly to Mill Street 48 feet and the easterly line ran northerly along Mill Street 110 feet. The plot contained approximately 4,032 square feet.
All of the experts agree that the highest and best use of Plot No. 16 was for retail stores and apartments and that the highest and best use of Parcel No. 17 was for retail stores. An expert witness for the claimants felt that Parcel No. 15 had value for commercial use in connection with Parcel No. 16 or for commercial use not requiring a retail location or for industrial use. The experts for the State felt that the property had essentially no value for commercial purposes but that it was suitable for what they described as “ semi-industrial ” since industrial use was being made of property immediately to the south and property on Mill Street further to the south.
A greater conflict in the opinions of the experts arose from their respective considerations of the income-producing aspects of the property. There was introduced in evidence a schedule of rental income as of the date of appropriation. This schedule showed rentals of $1,180 per month or $14,160 per year. It included nine apartments and eight stores located in the building-having frontage on Genesee Street and the entire building in which the restaurant was located fronting on Mill Street together with the storage building as one rental under lease to George Bahouth, the claimant in Claim No. 36492. This schedule shows no income from the fourth floor of the building at the northeast corner of the plot which the testimony indicated had been occupied as a studio by a commercial artist.
Claimant’s expert witness arrived at the conclusion that a reasonable rental income from the property was $25,540 per year. One of the State’s expert witnesses used the scheduled income of $14,160 per year as the proper measure of the income-producing capacity of the property. The other expert for the State used the scheduled rents except that he increased the reasonable rental for the shoe store which fronted on Mill Street *498 in the building at the northeast corner of the property from the $200 being paid by claimant’s son who operated the store to $300 per month. This expert also increased the rental on the restaurant building from $150 provided for in the lease for a five-year term from October 1, 1956 to September 30, 1961, to $200 per month.
The effect of the testimony of all of the experts was to establish that this was an excellent retail location in a rapidly growing community. One of the State’s experts in connection with other sales in the area stated that a location on the south side of Genesee Street was more advantageous than a location on the north side.
The court finds that the fair market value of the property involved in Claim No. 35268 shown as Parcel No. 16 on Map No. 15 was $124,000 as of the date of the appropriation.
The claim of George Bahouth which is No. 36492 also relates to a part of this plot since he occupied the building fronting on Mill Street under a lease providing for rent of $150 per month and a term which expired on September 30,1961. The obligation of George Bahouth to pay the rent ceased when title to the property passed to the State of New York. (Lodge v. Martin, 31 App. Div. 13.) Both the landlord and tenant had an interest in the property appropriated and the value thereof must be divided according to the nature of the respective estates. (Matter of City of New York [Delancey St.], 120 App. Div. 700; Matter of City of New York, 182 N. Y. 281; 4 Nichols, Eminent Domain [3rd ed.], 144.)
The court finds that the fair market value of the plot shown on Map No. 15 as Parcel No. 16 and involved in Claim Nos. 35268 and 36492 was $124,000. Of this amount the court finds that the interest of the claimants in Claim No. 35268, Nassir Bahouth and May Zine Bahouth amounted to $119,600 and the interest of the brother of Nassir Bahouth, claimant George Bahouth in Claim No. 36492 amounted to $4,400.
The court finds that the fair market value of Parcel No. 15 as shown on Map No. 14 for which Nassir Bahouth and May Bahouth seek recovery in Claim No. 35269, was $9,000.
The court finds that the fair market value of Parcel No. 17 shown on Map No. 15 for which compensation is sought by Prank Bahouth, Jr., in Claim No. 35984 was $14,000 on the date of the appropriation.
The court has viewed the premises. None of these four claims has been assigned.
In Claim No. 35268 the claimants are entitled to judgment in the amount of $119,600, with interest thereon from May 7, 1957 *499 to November 7, 1957, and from January 15, 1958 to the date of entry of judgment.
In Claim No. 36592, the claimant is entitled to judgment in the amount of $4,400, with interest thereon from May 7, 1957, the date on which title vested, to November 7, 1957, and from March 27, 1959, the date on which the claim was filed, to the date of entry of judgment.
In Claim No. 35269, the claimants are entitled to judgment in the amount of $9,000, with interest thereon from May 7, 1957 to November 7, 1957, and from January 15, 1958 to the date of entry of judgment.
In Claim No. 35984, the claimant is entitled to judgment in the amount of $14,000, with interest thereon from May 7, 1957 to November 7, 1957 and from September 30, 1958 to the date of entry of judgment.
Let separate judgments be entered accordingly.